May it please the court I'm Alan Milstein. I represent Brandon Austin. I'd like to reserve three minutes for rebuttal. So I'm going to argue the title nine issues. My colleague Mr. Michaels will argue the 1983 issues for the last three minutes. So at first glance the question is are you going to adopt or have you already adopted the McDonnell Douglas standard? I think you've already had even though the university is arguing that you haven't. If you look at the the case that we cited you've certainly used that standard in the summary judgment context. There's no reason to think you wouldn't use it in the 12b6 context. Well I think there is a reason. Of course if you go back to the history of McDonnell Douglas it was in the summary judgment context in a title 7 case. But the Supreme Court in Sawierkiewicz, I mean that's how you pronounce it, they basically said that they rejected McDonnell Douglas at the pleading stage. So I'm interested to know how you square that statement with your effort to adopt it at the pleading stage. Well after that Supreme Court case you had the Doe v. Columbia case. Right that's a second circuit case. And the way the Second Circuit construes it I think may be just wrong. So let's say you don't have the Second Circuit case and of course we're not bound by the Second Circuit. In your view how can you square the clear statement in Sawierkiewicz with the standard that you're you are now trying to adopt? Well I mean I think in Imeldi you essentially adopted the same standard as Doe v. Columbia. But the reason I said at first glance is because I don't think it matters. Well that's another question of course. It might not matter because you could get to the same result in your view or in the defendant's view. I guess each side thinks it doesn't matter. So the difference is whether it's minimal plausibility or plausibility. And I think under either if you look at the at the Baum case in the Sixth those are the two closest cases to this one. In the Baum case you had a situation where the accused did not have the right to cross-examination, did not get a list of the witnesses. And the court essentially said that the lack of cross-examination to not have the right to cross-examine witnesses itself essentially proved the erroneous factor that had to be proven in order to in order to succeed on Title IX. And in addition in the Baum case because we you need to not only show some art you need not only to show an articulated doubt as to the accuracy of the result, you need to have it tied to gender bias. And also in the Baum case in that Sixth Circuit case it said that where you've got a situation at the University of Michigan where that case took place, where you've got protests and and the public essentially pressuring the university to in essence kick out these guys who've been accused that that's gender bias. So you've got the combination of no cross-examination and you have the to aggravate the protest. And as the court said in Doe versus Columbia, it's certainly plausible that when you've got those kinds of protests that the board, the hearing board, is going to want to not essentially fan the flames of those protests. And again as said in Doe versus Columbia and in the other cases, it only has to be a plausible reason for the board doing what it did. It only has to be a plausible reason. Would you explain in your view the difference between this conference administrative proceeding and the panel hearing and what in your view your clients gave up by not going to a panel hearing and vice versa? It was a distinction without a difference. In essence it was a Hobson's choice given to Mr. Olson's attorney. You could have a panel conference or you could have the administrative conference, but in neither case are you going to have the right to cross-examine. In neither case are you going to have the right to call witnesses. And so counsel said well you know between the two of them what difference does it make? Well you had your client had the right to people of their choosing be contacted for information, had the right to counsel. There was a hearing officer present. But no right to cross-examination. Is that in your view required under Matthew's analysis for every due process hearing in this context? Not for every due process hearing. So when you have he said versus she said with no other witnesses able to in essence say I heard that or I heard this. In that case as Baum said then you need to have the cross-examination. There are other cases. I need to clarify a factual question then for with regard to the he said she said. The ultimate conclusion was as I understand it only that express consent is required and implied consent isn't good enough under the policies of the University. And I did not understand your clients to be arguing that they had received express consent as distinct from implied consent. So where is the factual dispute that would have in your view demanded cross-examination? What we allege in our complaint and what is in the student brochure and what is present in other cases is you need either verbal consent or unmistakable physical indication of consent. Either or and we pled both. And again the court has to take everything that we pled and that is correct. You know it doesn't have to be verbal consent. It doesn't have to be verbal. So what happened in this case as happened in some of the other cases. The woman voluntarily goes into the cab. The woman voluntarily goes to the apartment. The woman as happened in in the Columbia case she takes off her clothes. So there were again we allege that it was verbal testimony of discovery I believe our clients will say to some extent there was verbal consent but there also was unmistakable physical indication of consent. And that's enough. Just to be clear my read of it is that what you alleged in your complaint is the verbatim definition of consent from the University's policies. Do I have that right? That's correct. Which included again that line that it's unmistakable physical indication of consent. That that's enough. Now again there are two theories. One is erroneous outcome and we believe it's hard for me to understand how the judge could say that we did not adequately plead that there was an erroneous outcome. If you look at the paragraphs of the complaint we pled it in detail. But there's a second theory with respect to Title IX and that's the selective enforcement theory. The judge totally ignored that theory. So the selective enforcement theory says if in either in the initiation or in the penalty there is gender bias then that also states a claim under Title IX. So in this way where is the allegation of similarly situated students or situations? I When you talk about selective enforcement then that's what you're talking about is you're talking about comparisons of similarly situated situations and the government or in this case the University does not treat them similar and that's why you have selective enforcement. So what where is I'm looking for the allegation that shows that similarly situated students were treated differently based on the outcome in some way. So what we alleged is essentially and what happened in this case is that they said to counsel. Okay well let's first start not with what you're saying and what they said but tell me where in the complaint I look for that fundamental allegation that really lays out the selective enforcement claim. The treating the different groups differently. Well we said it was that what he was what he was essentially sentenced to was four to ten years and that in none of the other cases was was four to ten years on the table or imposed. But how does that relate to a gender-based discrimination? Well I'll get to that. So okay well just tell us straight up because I'm really want to talk about due process. Yeah if you could. But I want to hear why. The gender base has to do with the with the fact that in every in every one of these cases that the males and we have affidavits from the attorneys saying that the males were always convicted essentially by the by the University. In the one case in which there was a the attorney said he had a woman client she was not convicted. You had these protests going on and you had the college president giving a speech with code words. I'm really having trouble tying that up with your selective enforcement. So just tell me in short order what's the bottom line on selective enforcement just so I understand your theory. If you looking at the amended complaint? Third amended complaint yeah. Which is 148 to 155 in the record. We allege that as a result of all the again this isn't in the initial pleading stage where everything's got to be construed in our favor. We allege that this these these protests the speeches by the president all essentially all is gender bias. It can be construed no other way but at least it's plausible. Counsel you have eaten into your colleagues time so we'll hear from him next. Although you do have the three minutes that he promised us from you so I was gonna ask about that. I see we have our three minutes. I'll keep going okay Thank You Your Honor. My name is Brian Michaels. I represent Mr. Artis and Mr. Dotson. What I want to start with is not so much a legal analysis but just a factual underlying and I want to discuss the factual presentation by attorney Greg Verilroot. Could I ask my question would you mind terribly if you're talking about due process because you have very little time and I'd really like to talk about the liberty interest and the reputational interest would seem to have been given very short shrift here. Do you have an argument are you making an argument under the due process clause that your client had a protected reputational interest? Yes and we have that at Goss which is a 1975 US Supreme Court case and Marin which is 1974. It talks about the nature of one's good name, the nature of one's subject to government action. You've answered my question. What I want to do about Mr. Verilroot and I have I'm sorry I usually start I'm blind in one eye so I have to turn. Mr. Verilroot's declaration presents the facts of the university's own investigative report. Now bear in mind we are at the stage where what's merely trying to break down the doors of discovery but as his client as he represented his client he was not allowed to take with him the the investigative report done by the university but he was allowed to read it and in his declaration he swears that as he reads this report he believes that their investigation exonerates that it exculpates these students and that he was surprised that there was any discipline because their investigation supports the students own story. Now we don't have this report but if the university's own investigation plausibly exonerates and exculpates these students we need to see that report because that would undermine any defense by these defendants of a title of no gender discrimination, no there was due process and of course qualified immunity because anybody would know that if you're an and your own investigation exonerates the person you're accusing of a crime then you should not pursue a criminal action against that person or a disciplinary action in this case. I say there wasn't a criminal action by these defendants. A disciplinary action I'm sorry I said criminal I got a little carried away there but you know why would they pursue a disciplinary action against a man when their own she said to do. Again these are at the pleading stages we must take Mr. Vero Rude's declaration on its face as true. He did not receive a copy of this report because he wasn't allowed to by the university. So we think that you know with little time I have that was the highlight point I could make on all issues at once. If there's a report by the university that exonerates and by all means we need to open the doors of discovery on all of these constitutional issues of whether there was due process whether there was gender discrimination and of course qualified immunity. I appreciate you allowing me to take these moments and if you have any questions I'm certainly available at this time. I don't believe we do and since we did ask a lot of questions one one of you may have two minutes for rebuttal when the time comes. Thank you very much. Good morning may please the court I'm Kevin Reed I'm vice president and general counsel for the University of Oregon here to argue for repellees. Title nine. Your honors. Can we talk about due process? Absolutely. I'd really like to know why that why the position is and I don't think there's a strong argument here at all about a protected property interest so just to answer the question of why there's no liberty interest and why these folks don't have a reputational interest. We think that that matter was fully resolved in Paul versus Davis your honor in which the court said that without finding the property interest which does not exist. I'm not talking about a property interest I'm talking about a liberty interest. I fully understand. Forgive me all right I'll listen. The court did hold that one could not pursue a liberty interest without showing an underlying violation of a property right as well. Has Paul versus Davis. The question was every defamation by a public official could blossom into a title. No that's not the Supreme Court's authority in this area. There's there are other instances where the court is made very clear that you have to do a lot more the government would have to do a lot more than defame someone and it's not enough to just fire someone but there are admittedly outlier cases but cases where the government has taken action for example labeling somebody a communist something really vile really defamation per se where that has been deemed sufficient. Why isn't that sufficient here in this day and age because these folks are being accused of sexual assault. They were accused of a violation of the student conduct code which is having penetrative sex without consent. Nobody at the university accused them of rape. Nobody at the university called it sexual assault. Is it really your position that this isn't something that would have been akin to a deep stain or badge of infamy? Really? No your honor this was obviously a very serious matter for the university. Very serious all the way around so it's just a question of whether they have a protected interest to get to the question to even get to the question about whether there was adequate process. Fair point your honor and they did have adequate process. That's my first. And it's not about adequate process I'm trying to figure out why your position is that they didn't have a protected interest at all. Because we believe that Paul versus Davis says that there needs to be a property interest and in the state of Oregon and that that interest those interests that need to be protected by due process are established by state law and we don't believe that there's a state law that established an interest that entitled them to due process and certainly didn't entitled them to more process than they actually received. My first argument is that they did receive due process your honor. Are you linking then the reputational interest to the liberty interest? Yes your honor. As opposed to a separate interest? Yes your honor I know I believe that they are I believe that that is the argument as pled in the fourth amendment in the third amendment complaint. Like in the federal employment cases you need the right to employment and then you can also have a right to reputational harm. Exactly your honor. And you're just saying in your view there is no foundational right? There's no foundational right to the liberty interest without because there is no foundational property interest as established by the state of Oregon as found and certainly has not been clearly established as the district court found when he granted qualified immunity. And this last point you're making really goes to qualified immunity which again a separate point. That last yes your honor. The more fundamental point is they did get due process. Due process requires a fair opportunity to be heard to understand the and an opportunity to present evidence. They had all of those things. Is there is there any case that is similar to this that you're aware of that squarely holds that cross-examination is not a required element of a due process hearing? I'm unaware of a case that holds the cross-examination squarely holds the cross-examination is not required that's or is not an element. That said there's only one case that would establish that it is and that is Baum which I would argue is not necessarily correctly decided but certainly was decided on the facts of that case in which it was a word against word allegation that was dispositive in that case as the court found. There is no certainly no clearly established right in the circuit or in the state of Oregon to cross-examination in these contexts and it happens regularly in university processes across the country. I'm not quite sure why this word against word distinction matters here because as I understand the students argument they're basing it on the on the or clause of the student misconduct rules and that is or something that is unmistakable conduct. So in some ways if the conduct is not disputed so much it's like if this this and this happened which they allege that are you just saying as a matter of law that's not unmistakable conduct or that it is unmistakable conduct I mean is it decided almost like a matter of law or in their view they've you've got sort of they still have a he said she said. Your Honor no my argument is that Mr. Weintraub when he sat as the tribunal in the administrative conference had sufficient evidence in front of him to find a violation of the Student Conduct Code without necessarily resolving the dispute between what the female student said and what these respondents in the case said because. And that's how you would distinguish it from Baum in some respect. Absolutely Your Honor because the confessions of the students themselves in the surreptitious recordings and text messages with the female student as well as what they said to the police was enough for Mr. Weintraub. Mr. Dotson. To decide what? To decide that there hadn't been any conduct that was unmistakable? Yes that there was not explicit consent for the conduct that was engaged in. Consent could be withdrawn at any time Your Honor. Mr. Dotson in his statement to the police confesses that after the first encounter in the bathroom when the female student went in the hallway she was crying and yet he pulled he brought her back into the bathroom with two of his friends to then yes he's he does state that they stopped at that point but those facts combined with the statements from the young men themselves they understood why she was upset. They understand that they why she would feel that she was taken advantage of. Was it the university position that these conflicting facts which are very troubling facts and no one is minimizing them but we're just trying to get our arms around this as a again it's a 12b6 so trying to get our arms around how this can be decided as a matter of law when there's this very consent that's in the university policy and it sounds like now what you're arguing is that even if consent was given it was with or if it could have been understood by unmistakable conduct that it was then withdrawn is that it? Yes with one caveat Your Honor. I'm saying that that is what Mr. Weintraub found and it was well within his prerogative. He didn't abuse it. He didn't engage in an erroneous outcome but the real question you're asking. Did he find that it was withdrawn? He found that they violated there's no specific factual finding in his decision. What he did find is that they did not have explicit consent for the penetrative sexual conduct that they engaged in right but I don't think he referred forgive me I don't think he referred to this definition which is a peculiar definition and it's an either-or it allows for this unmistakable conduct and that it sounds like your answer is we don't have that. I believe Mr. Weintraub did have enough to make the decision he did. My real argument Your Honor is that the district court was not there to retry that case. The question before the district court on the Rule 12 motion was did these individuals have due process? Did they have an opportunity to understand the charges? I have I have one one sort of follow-on question I think to to both of my colleagues questions. I'm trying to just pinpoint the your argument concerning cross-examination seems to me to be twofold. The first is it's not necessarily required and second it isn't required in the circumstances because the decision concerning discipline rested on this the plaintiffs own account of events. Is that is that your position? Yes Your Honor that is a position. I would add to that very importantly that ultimately the due process claims the section 1983 claims lie only against the individually named defendants in this case. The 11th precluded those claims to be brought against the University which means that qualified immunity becomes the dispositive issue here. In the due process arena would you just explain on behalf of the University what is the difference between this administrative conference and the panel hearing? Absolutely and they're very similar and it was the choice that they made as advised by counsel to go for the administrative conference. So what did they have that was in fact due process? They had a right to see the record which they did. Mr. Billerud's declaration says that. Now he wasn't allowed a copy out of the room but he was allowed to make notes and see it and see what was in there. They were allowed the plaintiffs below had rights to counsel. They had the rights to an impartial decision-maker. They had the rights to present a response. They had a right to present supplemental material which Mr. Billerud's declaration says they did and so one of the fundamental claims is well Mr. Weintraub didn't subpoena the taxi driver. Well the taxi driver could have been subpoenaed had they chosen to go with the panel hearing approach on advice of counsel. They chose not to do that. So maybe you're mixing and matching what happened with the procedural aspects. What's the fundamental difference? I know one big difference of course is one counsel pointed out is they felt they were in a Hobson's choice in terms of the expulsion situation. But what what do you get in a panel hearing? What you get in the panel hearing is all of the above that I just described plus the right to call and examine witnesses, the right to have the Office of General Counsel issue subpoenas to have those witnesses attend, and the right to an appeal. I'm saying that it really wasn't... Is cross-examination provided in the panel hearing? Yes, Your Honor, it is. Okay. And where do we look on the record to see what the panel hearing gives you? Or is it in the state administrative procedures or the university procedures? So it is not within the record, Your Honor, but it is judicially noticeable in the Oregon Administrative Rules. Actually, the former Oregon Administrative Rules were in effect in 2014. OAR 571, 021, 41. 571. 021. Thank you. Counsel, what's it mean that the district court's observation that each player, quote, benefited the full promised year of their scholarship? So I don't need to talk about the renewable portion of the scholarship, but what about the credits they had been awarded for that quarter where this incident occurred? The scholarship awarded, you know, allowed them the cost of tuition, the full cost of attendance, which is a stipend to cover their rent, they're given food at the training table. They enjoyed all of those benefits through the end of the school year. Okay, so it was never terminated? Correct. Before that year? Wait a minute, this happened in March, right? The incident happened March 9th, the early morning hours. The administrative conference, I believed, happened in May. But they didn't finish that school year? My understanding, and the record is not entirely clear on this, Your Honor, the students themselves voluntarily left the university at some point in March or April after their basketball season was over. That was not the university's determination. We just certainly didn't recoup from them their tuition. We certainly would have continued to allow them to go to the training table, with the exception of Mr. Austin, who was still under because he didn't present himself to a hearing on the ETS. He was under a temporary suspension that did restrict some of his activities. But in terms of the scholarship, the food, the lodging, the tuition was still covered. But they weren't allowed to finish out the term and earn those credits? They absolutely were allowed. Wait, I misunderstood. What about Mr. Austin? He was not allowed? He was under a suspension? He was under an emergency temporary suspension. The record is not entirely clear about exactly what those constraints were. It's a typical process in any Title IX proceeding in which one puts some restrictions on the parties. I'm just trying to figure out whether he was allowed to take those exams and earn those credits. Somewhat of a moot point, Your Honor. He left town and never came back. It was not our choice. It was his choice. Where's that in the record? It is not in the record, Your Honor. It was not material. It's not what they pled. The issue was whether they got... Well, they sure did. They pled they had a property interest. And the sentence is, I think, awkward because they talk about a renewable scholarship interest, and the future years, I think, is not of interest to me. But the credits that had been awarded to them, pursuant to which they were, you know, studying at the time of this incident, is interesting to me. And I think they sure did plead that. Yes, Your Honor. They were allowed to continue their school year. They certainly had an... Except for Mr. Austin. Which he could have appealed that emergency temporary suspension. And we'd be happy to produce a supplemental briefing on that issue, Your Honor, since the record is not clear about whether these individuals were allowed to continue... Well, we're here on the pleadings, so... But the pleadings, in my view, were ambiguous. But they don't flatly say that any money was taken away for the current school year in which this incident occurred. For the precise reason because that it was not, Your Honor. And ultimately, again, the issue on due process is one that lies only against the individual defendants, which means that if qualified immunity disposes of those claims, then there is no longer an issue for the District Court to even hold a trial on the issue. It's, as this Court well knows, qualified immunity is an immunity against suit. I did want to briefly address the Title IX issues, Your Honors, because I do think that they are also important here. Iqbal is controlling. Doe versus Columbia obviously did not overrule Iqbal. Let's bear in mind that Title IX is an intentional discrimination statute. In order for them to prevail, they have to provide specific facts that raise a plausible allegation that Mr. Weintraub, when he made the decision in the administrative conference, was infected by intentional bias. That is the argument that was made by the plaintiffs in Iqbal, who said in the wake of the 9-11 terrorist attacks, that when the federal government rounded up Arab Muslim men for detention, that they were discriminated against Arab Muslim men. That's largely the argument they're making. But if you're going to show us numbers, you've got to show us some specific facts from which one can infer the malicious intent by the government actors here. That is something they failed to do after four bites at the apple. They have conclusory factual allegations that do mimic what is in the Doe case, but they don't have specific facts that show that Mr. Weintraub, the decision maker, or that the facts that are found within the Yousef case, statements by the other pertinent government officials or a pattern of decision-making that shows gender bias. They have shown none of that, Your Honors, and therefore they are not entitled to a fifth bite at the apple in front of the district court. Thank you, counsel. Thank you. The lawyers on this side of the table have two minutes. Thank you, Your Honors. Just a couple of motion mentions. In terms of property interest, there's the Haggard case. It's a Ninth Circuit case in 1984 that assumes a scholarship as a property interest. And it's in our brief. Counsel, again, not focusing on the renewable portion, but on the quarter that these athletes were working on at the time. What is the status of the record? Were they allowed to finish their classes? What do we know about that? I don't know if they were allowed to finish their classes, but we included the contract for the scholarships, the $40,000 a year. Yes, I'm aware of that. I'm just trying to figure out whether they got the benefit of that current term, and I don't see that. Oh, I see. I think they were paid in advance is what I understand. And no money is alleged to have been recouped from them, correct? That's correct. And they, in terms of being a student and good standing under the contract, by the time that determination was made, basically the school year was over, right? The what was over? The school year. The school year, yes. But in terms of like if you compare it to Stratton, we don't know the contract that Stratton had for his medical residency. We can assume that there was some similarly morals clause. If you do something that violates the student conduct, you're going to lose your term to be a medical resident. But we don't have that because we have not been able to discover that. And, again, we're at the stage of the proceedings where we need to engage in discovery to answer a lot of these broad questions. Let's step back to see what we need to answer on the pleadings. The question is we've got the contract, which we can read, and it's pretty short. Actually, I was surprised. I know. Who knew that these athletic contracts existed? But, again, we don't know what the medical residency contract is for Stratton. No, but the question here, as I think Judge Kristen has been pointing out, there's the contract for that school year in which they were in, and then there's, of course, the renewability. So is there anywhere in your complaint that you've alleged that they were deprived of anything under the contract for the school year they were in? No, and I take exception to the word renewability because the presumption is that they would continue. Renewation, we'll call it. They did not have to reapply every year. And we don't know how similar or dissimilar that condition is from the medical residency in Stratton, for example. Thank you, counsel. Okay. We appreciate very much the arguments of all three counsel. They've been very interesting and helpful in this challenging case, and the case is submitted. Our final case on this morning's docket is informing citizens versus the FAA.
judges: McKeown, Graber, Christen